Christine M. SIBILLE, Plaintiff,

v.

**FEDERAL RESERVE BANK OF NEW YORK, Defendant.**

No. 90 Civ. 5898(PNL).

United States District Court,
S.D. New York.

July 11, 1991.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This suit under the Freedom of Information Act ("FOIA") arises out of a request by plaintiff Christine M. Sibille for notes prepared by certain officers of defendant Federal Reserve Bank of New York ("Bank"). On this motion, plaintiff seeks to compel the production of an index of the requested documents, pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The Bank cross-moves for summary judgment on grounds of lack

of subject matter jurisdiction, and inter-venor-defendant Board of Governors of the Federal Reserve System ("Board") moves to dismiss also for lack of subject matter jurisdiction.

## BACKGROUND

On May 31, 1990, Sibille made similar FOIA requests on the Bank and the Board, seeking documents relating to communications of the Bank and Board referring to Drexel Burnham Lambert Group Inc. Sibille, who is an attorney associated with the law firm of Jones, Day, Reavis & Pogue, made the requests in connection with the firm's representation of the Official Committee of Unsecured Creditors of Drexel Burnham Lambert Group Inc.

On June 7, 1990, the Bank responded, stating that it believed it was not subject to FOIA, but nevertheless had a policy to "comply with the spirit of FOIA." The Bank wrote that it would need additional time to respond to the request, citing 5 U.S.C. § 552(a)(6)(B), and delayed its response time to June 28, 1990.

On June 28, 1990, the Bank informed Sibille of the existence of responsive documents, but asserted that the documents would be withheld pursuant to Exemption 5 of FOIA.[1] On July 11, 1990, Sibille appealed the decision. On August 13, 1990, this administrative appeal was denied. Throughout this process, Sibille claimed entitlement to a *Vaughn* index of documents to which she was denied access. The Bank refused to provide an index.

On July 20, 1991, the Board informed Sibille that it had located no responsive documents.

On September 12, 1990, Sibille filed this complaint seeking a *Vaughn* index and the production of the requested documents. According to plaintiff, the Bank subsequently informed her that she should address her request to the Board, as the documents requested concerned information of the Board. On October 23, 1990, the Board denied plaintiff's FOIA request, stating that the responsive documents were not agency records within the meaning of FOIA and further stating that the documents were also subject to FOIA exemptions 5 and 8.[2] Plaintiff appealed the Board's denial of her FOIA request. The appeal was denied on November 20, 1990.

## DISCUSSION

### A. *Vaughn Index*

■ Under the provisions of FOIA, agency records may be exempt from disclosure on various grounds. *See* 5 U.S.C. § 552(b). When an agency claims an exemption, the party requesting disclosure faces the difficult task of contesting the claim without being able to review the documents. To help compensate for the informational imbalance, courts may order the agency to provide an index of the documents, to segregate the disclosable from the non-disclosable portions, and to correlate each non-disclosable portion to a specific FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *see also Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 73–74 (2d Cir.1981). Such a *"Vaughn* index" affords the party seeking disclosure a better opportunity to evaluate the agency's claims, and the more robust adversary process which results assists the court in its *in camera* review of the documents.

■ While defendants have stated their intention to invoke specific FOIA exemptions, on this motion they do not do so. Instead, they challenge this court's jurisdiction by asserting that the requested materials are not "agency records." Citing *American Broadcasting Companies, Inc. v. United States Information Agency*, 599

---

1. This exemption covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

2. Exemption 8 covers matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8).

F.Supp. 765 (D.D.C.1984), plaintiff contends that the court has authority to order the production of a *Vaughn* index before addressing the jurisdictional challenge. Plaintiff asserts that this procedure is appropriate here because of the dilatory conduct of the defendants. Sibille complains that the Bank did not raise the "agency record" issue in its original response to the FOIA request, but only on this motion. She notes that the Board's response came five months after plaintiff's initial request and three months after the Board had initially stated that no responsive documents were available.

A *Vaughn* index does not appear necessary at this time. The defendants have submitted affidavits of the authors of the documents at issue. Because the affidavits are sufficient for resolving the dispositive issue of whether the documents are agency records, I will not order a *Vaughn* index before addressing the jurisdictional question.

**B. *Subject Matter Jurisdiction***

 FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Federal jurisdiction is thus dependent on a showing that an agency has " '(1) "improperly" (2) "withheld" (3) "agency records." ' " *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980)). The dispute here concerns wheth-

er the requested information constitutes "agency records" under FOIA. The burden is on the defendants to demonstrate that the materials sought are not agency records. *Tax Analysts*, 109 S.Ct. at 2846 n. 3.

The appellate court decision that appears most helpful in analyzing the issue is *Bureau of National Affairs, Inc. v. United States Department of Justice*, 742 F.2d 1484 (D.C.Cir.1984) ("*BNA*"), which discussed the criteria for determining whether documents created by an agency's employees constituted "agency records" for FOIA purposes.[3] In *BNA*, the Court of Appeals for the District of Columbia Circuit considered whether the appointment calendar, telephone message slips, and daily agenda of William Baxter, the Assistant Attorney General for Antitrust, were agency records of the Department of Justice under FOIA. The *BNA* court noted that in *Kissinger*, the Supreme Court focused on four factors: "whether the documents were (1) in the agency's control; (2) generated within the agency; (3) placed into the agency's files; and (4) used by the agency 'for any purpose.' " 742 F.2d at 1489–90. *BNA* interpreted the prior case law to mean that the inquiry should focus on the "totality of the circumstances surrounding the creation, maintenance, and use of the document." 742 F.2d at 1492–93. While *BNA* stated that all these factors remain relevant in determining the status of documents created by an agency employee and located within an agency, the court focused particularly on the use of the document.

In examining the use of documents, the *BNA* court and others have looked beyond

---

**3.** The Supreme Court decisions in this area, *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989); *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), addressed a different aspect of the "agency records" issue: whether materials that had been created by someone who was not an employee of the agency at the time of the documents' creation were "records" of the agency. In *Tax Analysts*, the documents sought were copies of district court decisions which the Jus-

tice Department received in the course of litigating tax cases. The discussion of the definition of agency records in *Kissinger* concerned notes of Henry Kissinger's telephone conversations that had been made while he was Assistant to the President for National Security Affairs, but were located in his State Department office at the time of the FOIA request. The issue in *Forsham* was whether documents generated by, and in the control of, a private organization were "records" of the agency that provided funding and had rights of access to the information.

the question of whether the documents furthered an employee's performance of agency duties. The courts have focused on whether the documents were used solely by the employee who created them, or were available to other agency employees, as well.

*BNA,* for example, distinguished between the daily agenda of Assistant Secretary Baxter, which were found to be agency records, and the appointment calendars of Baxter and other government officials, which were determined not to be agency records. The court grounded this distinction on the extent to which the documents were used by other agency employees:

> First, [the appointment calendars] were not *distributed* to other employees, but were retained solely for the convenience of the individual officials. Second, the daily agendas were created by Mr. Baxter's secretary *for the express purpose* of informing other staff of Mr. Baxter's whereabouts during the course of a business day so that they could determine Mr. Baxter's availability for meetings.

742 F.2d at 1496.

In *BNA,* the court discussed whether the various records were "personal" both in the sense of not related to agency business and in the sense of utilized by only one individual. Other decisions make clear that personal use, without regard to content, may cause documents to be considered personal, not agency, records. In *American Federation of Government Employees, Local 2782 v. United States Department of Commerce,* 632 F.Supp. 1272 (D.D.C.1986), *aff'd on other grounds,* 907 F.2d 203 (D.C.Cir.1990) (*"AFGE"*), the court determined that handwritten logs kept in the front of certain notebooks were not agency records, stressing that the documents, though work-related, were for the personal use of the author:

> The Court finds that the logs, although undoubtedly work-related, were nevertheless a voluntary piece of unofficial scholarship of an employee who wished only to facilitate her own performance of her duties, and their disclosure can no more be compelled by a request for them

under FOIA made to her employer than could, for example, her desk-side telephone directory or day-book.

632 F.Supp. at 1277. In *Miranda Manor, Ltd. v. United States Department of Health and Human Services,* No. 85 C 10015, 1986 WL 4426 (N.D.Ill. Apr. 8, 1986), the operators of a nursing home sought access to the notes of individual surveyors, made during an HHS survey of the nursing home. Although the notes were clearly related to the work of the agency, the court emphasized that they were utilized solely by their authors and concluded that the notes were not agency records.

> The survey notes sought by plaintiff are the personal notes made by each surveyor during or after his inspection of plaintiff's facility. Nothing indicates the surveyors were required to take such notes, nor is it alleged that these notes were circulated among the staff. The affidavits of the four surveyors indicate that these notes were compiled at their discretion, and were used solely to "jog" and "refresh" their memory....
>
> The fact that data or information contained within materials is used as a basis for agency action is not enough to convert this material into an agency record subject to the FOIA.

Slip op. at 2 (citations omitted); *see also Dow Jones & Co. v. General Servs. Admin.,* 714 F.Supp. 35 (D.D.C.1989); *Kalmin v. Department of the Navy,* 605 F.Supp. 1492 (D.D.C.1985). The court applied a similar analysis in *Washington Post v. United States Department of State,* 632 F.Supp. 607 (D.D.C.1986) considering a request for the "records of schedule" of Secretary of State Alexander Haig. The "records of schedule" were typewritten transcriptions of daily logs kept by Secretary Haig's personal secretary and his receptionist, chronicling Haig's official and unofficial activities. In finding that the documents were agency records, the court emphasized that the documents were kept in agency files and that Haig, himself, did not make personal use of the material. The court stated:

Nothing in this opinion should be construed to contravene the holding in *Bureau of National Affairs* that personal papers created solely for the personal use and convenience of the author are not encompassed by the FOIA.... [T]he Court concludes, that where the creation and maintenance of a document evinces numerous indicia of agency recordkeeping, under circumstances totally lacking in incidents of personal use, the document may be deemed subject to disclosure under the Act.

632 F.Supp. at 616 (citation omitted).

In sum, though *BNA* cautions that factors other than use must be considered, it is clear that courts have followed the lead of *BNA* in deeming agency or personal use to be an important element in determining whether documents created by agency personnel are agency records.

The documents at issue here are handwritten notes of meetings and telephone conversations, taken by two employees of the Bank, Executive Vice President Chester B. Feldberg and Vice President Barbara L. Walter. The defendants have submitted affidavits of Feldberg and Walter describing the preparation, storage, and use of the notes.

The notes are only partial reflections of conversations, and the employee made no attempt to complete omissions or check the accuracy of the notes. Feldberg Aff. ¶¶ 8–9; Walter Aff. ¶¶ 11–12. The notes were taken at the employee's own initiative, to enhance his or her own recollection. Feldberg Aff. ¶ 11; Walter Aff. ¶ 14. The notes were kept in a locked drawer in the credenza behind the employee's desk, and only the employee and the employee's secretary had access to the drawer. Feldberg Aff. ¶¶ 16–17; Walter Aff. ¶¶ 19–20. Before the FOIA request, no one other than the employee ever read or handled the notes. Feldberg Aff. ¶ 19; Walter Aff. ¶ 22. The only time Walter utilized the notes was in verifying a chronology used in connection with testimony of Alan Greenspan, Chairman of the Board of Governors of the Federal Reserve System, before a subcommittee of the House Judiciary Committee. Walter Aff. ¶ 29. Feldberg avers

that before the litigation commenced, he never reviewed his notes or relied on them in any way. Feldberg Aff. ¶ 25.

It is clear that the documents were created by agency employees to assist them in their performance of agency duties. The fact that a "significant portion" of the notes were taken after regular bank hours does not affect this conclusion. The notes were not, however, placed in agency files, and it was apparently the practice of the employees to discard notes of this kind from time to time, Feldberg Aff. ¶ 15; Walter Aff. ¶ 18.

The affidavits establish that the notes were for the personal use of the employees. As with the appointment calendars in *BNA*, the logs in *AFGE*, and the surveyors' notes in *Miranda Manor*, the documents here were created by the employees for their own personal convenience, and the documents served no other agency function. The notes were not written for circulation within the agency, nor were they created or stored in a manner conducive to consultation by agency personnel, other than the maker. No one beside the writers (and their secretaries) had access to the notes, and no one beside the writer ever saw them.

On consideration of the Supreme Court's *Kissinger* factors, I conclude that only one of the four favors a finding that the documents are agency records. The documents were indeed "generated within the agency." On the other hand, they were not "in the agency's control," "placed into the agency's files," or "used by the agency." *BNA*, 742 F.2d at 1489–90. I conclude that the notes are not "agency records" under FOIA.

This conclusion accords with the cases cited above, as well as with two other pre–*BNA* district court cases concerning personal notes. In *Porter County Chapter of the Izaak Walton League of America, Inc. v. United States Atomic Energy Commission*, 380 F.Supp. 630 (N.D.Ind.1974), the court found that handwritten notes of Atomic Energy Committee staff members, prepared in connection with a licensing proceeding, were not agency records. The court expressed concern that exposing the

private mental processes of the employees would discourage employee's from committing thoughts to writing and would impede the functioning of the agency. *Id.* at 633. *British Airports Authority v. Civil Aeronautics Board,* 531 F.Supp. 408 (D.D.C.1982), addressed the status of twenty-five pages of handwritten notes, prepared by an employee of the Civil Aeronautics Board ("CAB"), reflecting various events and meetings the employee attended. Relying on *Porter,* the court in *British Airports* upheld the CAB's claim that the notes were not agency records, but the "personal professional property" of the employee. 531 F.Supp. at 415–16.

In *BNA,* the D.C. Circuit criticized the reasoning of *Porter* and, by implication, *British Airports,* and declined to follow their method of analysis. 742 F.2d at 1493–94. That criticism, though, stemmed from *Porter's* focus on the content of the notes in question. *See BNA,* 742 F.2d at 1494 ("The court's analysis in *Porter County* was based entirely on the *content* of the notes, not on the agency's control, possession or use of the notes."). *BNA* held that consideration of the content, as opposed to the control, possession or use, of notes was inappropriate in deciding whether the notes constituted agency records. *BNA* stated that the concerns expressed in *Porter* were properly addressed within the enumerated statutory exceptions to FOIA, which contain content-based exemptions. *See* 5 U.S.C. § 552(b). While criticizing the reasoning of *Porter* and *British Airports, BNA* did not explicitly reject their holdings. Cases subsequent to *BNA* have continued to cite the holdings of *British Airports* and *Porter* with approval, *see AFGE,* 632 F.Supp. 1272 (D.D.C.1986); *Miranda Manor, Ltd. v. United States Department of Health and Human Services,* No. 85 C 10015, 1986 WL 4426 (N.D.Ill. Apr. 8, 1986), and there is no reason to read *BNA* as suggesting that documents of the kind involved in *British Airports* and *Porter* should be deemed agency records.

Plaintiff contends that this suit presents a novel element that distinguishes it from the cases discussed above in that the notes of Walter and Feldberg are the only existing record of the meetings and conversations they reflect. Plaintiff, however, offers no authority for the proposition that a document's status as a personal or an agency record should depend on whether the contents of the document are available from other sources. As plaintiff recognizes, in determining whether documents are agency records, courts focus on the "totality of the circumstances surrounding the creation, maintenance, and use" of the documents. *BNA,* 742 F.2d at 1492–93. Even if plaintiff is correct that the uniqueness of the document's content is one of the circumstances to be considered, the court rejects the suggestion that it is an "overriding circumstance" that renders the notes at issue agency records.

## CONCLUSION

The documents requested are not "agency records" under FOIA. Hence, this court lacks subject matter jurisdiction.

Defendant Bank's motion for summary judgment and defendant Board's motion to dismiss for lack of subject matter jurisdiction are granted. Plaintiff's motion to compel production of a *Vaughn* index is denied.

The clerk is directed to enter judgment dismissing the complaint.

SO ORDERED.